## UNITED STATES DISTRICT COURT, THE MIDDLE DISTRICT OF FLORIDA

## FORT MYERS DIVISION

**GREGG MARCELLUS HARDEN**

Plaintiff,

v.

**Case No.**: To be set by Clerk.

2:26-cv-406-SPC-NPM

**STATE OF FLORIDA**, et al.,

**ABIGAIL GROFF**, individually and in her official capacity as Assistant State Attorney;

**NADIA K. DAUGHTREY**, individually and in her official capacity as Clerk ok Court;;

**JAMES F. POTTER**, individually and in his official capacity as Sheriff of De Soto County;

**OPERATOR REDDEN**, individually; **Defendant(s).**

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

**COMES NOW** Plaintiff and files this civil action for declaratory, injunctive, and

other appropriate relief to remedy violations of federal statutory and

constitutional rights secured by the Constitution and laws of the United States.

This action arises under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and

is brought pursuant to 42 U.S.C. § 1983 for deprivations of rights committed

under color of state law. Defendants' actions have deprived Plaintiff of

fundamental constitutional protections and caused continuing harm.

Plaintiff seeks declaratory and injunctive relief, and such further relief

as this Court deems just and proper.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343

## I.    Jurisdiction And Venue

1.    This action arises under Title II of the Americans with Disabilities Act,
42 U.S.C. §§ 12131–12134; Section 504 of the Rehabilitation Act,
29 U.S.C. § 794; 42 U.S.C. § 1983; and the First, Fourth, and
Fourteenth Amendments to the United States Constitution.

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and §§ 2201–2202,
and authority to grant all relief authorized by federal law.

3.    Jurisdiction is proper over the State of Florida and state officials sued.
in their official capacities because Congress validly abrogated state sovereign immunity
under Title II of the ADA for access-to-courts violations and because Plaintiff seeks
prospective relief pursuant to Ex parte Young, 209 U.S. 123 (1908).

4.    Jurisdiction is proper over county and sheriff defendants as "public entities".
under 42 U.S.C. § 12131(1), and over individual defendants.
in their individual capacities for actions taken under color of state law.

5.    Venue lies in this District under 28 U.S.C. § 1391(b) because
a substantial part of the events or omissions giving rise to these claims occurred here, and
Defendants reside or conduct official business within this District.

## II.    Parties

### A.  Plaintiff

6.    Plaintiff is an individual and a qualified person with a disability under Title II of

the Americans with Disabilities Act, 42 U.S.C. § 12131(2). Plaintiff required

reasonable accommodations to access court and law-enforcement processes.

### B.  State of Florida

7.    Defendant State of Florida is a public entity under 42 U.S.C. § 12131(1), responsible for

the administration and oversight of court operations through its unified judicial system.

8.    The State is sued in its official capacity only for declaratory and injunctive relief under

Title II of the ADA and pursuant to Ex parte Young, 209 U.S. 123 (1908).

### C.  Abigail Groff

9.    Defendant Abigail Groff was, at all relevant times, a prosecutorial or

administrative official acting under color of state law.

10.    Groff is sued in her individual capacity for damages under 42 U.S.C. § 1983

for acts that interfered with Plaintiff's access to the courts and due process, and,

in her official capacity for prospective declaratory and injunctive relief.

### D.  Nadia K. Daughtrey

11.    Defendant Daughtrey is the Clerk of Court and Comptroller for DeSoto County, Florida.

12.    Daughtrey is sued in her official capacity for declaratory and injunctive relief

under Title II of the ADA and 42 U.S.C. § 1983, and in her individual capacity

for damages under 42 U.S.C. § 1983 based on her role in creating and

maintaining defective or false court records affecting jurisdiction and access to courts.

13.  At all relevant times, Daughtrey acted under color of state law within the scope of her court-administration duties.

### E. Deputy Operator Redden

14.  Defendant Operator Redden was, at all relevant times, a sworn law-enforcement or communications officer acting under color of state law.

15.  Redden is sued in his individual capacity for damages under 42 U.S.C. § 1983 based on his participation in verifying, transmitting, and enforcing void or unserved process in violation of the Fourth and Fourteenth Amendments.

### F. Sheriff James Potter

16.  Defendant James Potter was the Sheriff of DeSoto County and final policymaker for law-enforcement operations.

17.  Potter is sued in his official capacity only under 42 U.S.C. § 1983 and Title II of the ADA for policies, customs, and failures in training and supervision that allowed enforcement of void process and denied meaningful access to courts.

### G. Non-Party Actors

18.  Certain unidentified EMS personnel and John/Jane Doe officials of Lee County participated in events related to Plaintiff's injuries and are referenced only for background and context, not as defendants.

### III.    Factual Allegations

#### A. Plaintiff's Disability and Need for Equal Access

19.    Plaintiff is a qualified individual with a disability within the meaning of
Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131.

20.    Plaintiff has a mobility impairment that substantially limits walking and
prolonged standing.

21.    Plaintiff has previously received ADA accommodations in court proceedings
within the same judicial circuit.

22.    Accommodations previously provided included:

      (a) modified physical access;

      (b) scheduling considerations;

      (c) administrative assistance related to access to records.

23.    Court personnel were aware of Plaintiff's disability due to prior in-court appearances and
prior accommodation requests.

24.    Timely access to certified records, service confirmation, and accurate docket entries is
materially important to Plaintiff because physical mobility limitations restrict repeated
courthouse travel and emergency appearances.

25.    Delay or obstruction in record access has a disproportionate impact on Plaintiff due to
those limitations.

### B. Initiation of Criminal Proceedings and Absence of Lawful Service

26. On August 29, 2025, the State filed an Information in Case No. 2025-MM-000296-AX.

27. Docket Entry 13 reflects summons issued August 29, 2025 to Palm Beach County.

28. On September 26, 2025, Docket Entry 16 reflects summons returned unserved.

29. The return indicated "bad address / new tenant."

30. No personal service was completed.

31. No substitute service was completed.

32. No affidavit of perfected service exists in the court file.

33. Plaintiff did not receive mail service.

34. Plaintiff did not sign any return of service.

35. Personal jurisdiction had not attached.

### C. Issuance of Capias Without Service

36. On October 8, 2025, Docket Entry 18 reflects capias ordered.

37. On October 9, 2025, Docket Entry 19 reflects capias issued for judicial signature.

38. On October 22, 2025, Docket Entry 20 reflects capias issued to DeSoto County Sheriff.

39. At the time the capias was issued, the record reflected non-service.

40. No lawful service had occurred prior to issuance.

41. Capias issuance relied on docket representations indicating failure to appear despite lack of perfected service.

### D. Execution of Capias and Arrest

42. On November 3–4, 2025, Docket Entries 21 and 29 reflect capias executed.

43. Plaintiff was arrested and restrained.

44. At the time of arrest, Plaintiff's jurisdictional challenge had not been adjudicated.

45. Plaintiff lost liberty without prior lawful service of process.

### E. Continued Failed Service Attempts

46. On November 19, 2025, Docket Entry 29 reflects summons issued to Sarasota County.

47. On December 11, 2025, Docket Entry 36 reflects summons returned unserved.

48. The record confirms no perfected service occurred before or after the alleged non-appearance.

### F. Plaintiff's Notice of Jurisdictional Defect

49. On January 12, 2026, Plaintiff filed Motion to Quash Capias for Lack of Personal Jurisdiction (Docket 39).

50. The motion specifically asserted lack of service and lack of notice.

51. On January 14, 2026, Plaintiff filed a supporting declaration (Docket 40).

52. The court record was not corrected.

53. The capias was not vacated.

54. Enforcement posture remained in place.

### G. Record Discrepancies and Reliance on Defective Record

55. The clerk's docket reflected service-related activity despite documented non-service.

56. The record did not contain proof of personal service as required under Fla. Stat. § 48.031.

57. Despite record proof of non-service, enforcement actions proceeded.

58. Judicial and law enforcement actors relied on the docket representation.

59. Plaintiff repeatedly requested verification and correction.

60. No corrective pause occurred.

### H. ADA Record Access Obstruction

61. On January 20–21, 2026, Plaintiff requested certified copies of docket entries.

62. Production was delayed.

63. Non-disabled litigants ordinarily receive same-day certification.

64. Plaintiff required certified copies to challenge jurisdiction prior to enforcement exposure.

65. Delay impaired Plaintiff's ability to timely assert jurisdictional defenses.

66. The impact of delay was magnified due to Plaintiff's mobility impairment.

### I. Chronological Summary of Jurisdictional Breakdown

67. Information filed August 29, 2025.

68. Summons issued.

69. Summons returned unserved September 26, 2025.

70. Capias ordered October 8, 2025.

71. Capias executed November 3–4, 2025.

72. Subsequent summons attempts also returned unserved.

73. Plaintiff filed jurisdictional challenge January 12, 2026.

74. Enforcement posture continued.

75. No perfected service exists in the record.

### J. Ongoing Harm and Risk of Repetition

76. Plaintiff suffered arrest and restraint without lawful service.

77. Plaintiff suffered emotional distress and loss of liberty.

78. Plaintiff continues to face risk of future enforcement based on defective record.

79. The jurisdictional defect has not been formally adjudicated and cured.

80. Absent prospective relief, Plaintiff remains subject to recurring harm.

### K. Federal Jurisdiction, Ongoing State Proceedings, and

### Younger Abstention Context

81. A state criminal misdemeanor proceeding styled State of Florida v.

Gregg Marcellus Harden, Case No. 2025-MM-000296-AX,

is presently pending in the County Court for DeSoto County, Florida.

82. The pending case arises from a single misdemeanor charge

under Fla. Stat. § 843.02 for alleged obstruction, and remains open

on the state court's docket with future settings and enforcement posture intact.

83. Plaintiff acknowledges that this misdemeanor prosecution is

an "ongoing state judicial proceeding" within the meaning of Younger v. Harris for

abstention purposes, but only as to the narrow issues actually joined in that criminal case.

84. The State's prosecution of alleged violations of its criminal obstruction statute implicates important state interests in the administration of its criminal justice system and the enforcement of state criminal law.

85. Plaintiff does not dispute that, in the abstract, criminal prosecutions ordinarily satisfy the "important state interest" element of the Younger framework.

86. In this case, however, the federal claims do not seek to restrain the State's general interest in prosecuting criminal offenses, but instead challenge collateral enforcement conduct: the fabrication and maintenance of false service records, issuance and execution of void process, and denial of meaningful access to court procedures necessary to adjudicate jurisdiction before restraint of liberty.

87. Plaintiff has repeatedly attempted to obtain adjudication of federal constitutional objections—including lack of personal jurisdiction for want of lawful service, Fourth Amendment objections to the capias, and speedy-trial concerns under Barker v. Wingo—through motions and objections filed in the trial court and by petition or appeal in the Florida Second District Court of Appeal, Case No. 2D2026-0159.

88. The state courts have refused to provide a meaningful hearing or ruling on these constitutional objections; the Second District Court of Appeal declined to entertain or reach the federal issues, and the trial court has continued the enforcement posture while leaving the jurisdictional defect unresolved.

89. As a result, the state forum has not afforded Plaintiff an adequate opportunity to obtain timely adjudication of his federal constitutional claims before continued enforcement of the allegedly void process, and each new enforcement action compounds the ongoing injury.

90.   Plaintiff therefore alleges that the third Younger element—

an adequate and available state forum for federal constitutional claims—.

is not satisfied on the specific facts of this case.

91.   In the alternative, even if all three Younger elements were deemed present,

Plaintiff alleges that abstention is improper because the prosecution and

related enforcement conduct are being carried out in bad faith,

for an improper purpose, and through maintenance of fabricated jurisdictional records,

and because extraordinary circumstances exist in which irreparable injury

will continue absent prospective federal relief.

92.   Plaintiff does not seek to enjoin or dismiss the state criminal proceeding itself,

does not ask this Court to review or overturn any state-court judgment, and

instead seeks prospective declaratory and injunctive relief under Ex parte Young

against state officials in their official capacities to halt ongoing unconstitutional

enforcement practices that are collateral to, and independent from,

the merits adjudication of the criminal charge.

## IV.    Claims for Relief

**COUNT ONE – Violation of Title II of the Americans with Disabilities Act**

42 U.S.C. § 12132 (Against Public-Entity Defendants Only)

93.    Plaintiff realleges and incorporates paragraphs 1 through 80.

as if fully set forth herein.

### A.  Qualified Individual with a Disability

94.    Plaintiff is a qualified individual with a disability within the meaning of.

42 U.S.C. § 12131(2).

95.    Plaintiff has a physical mobility impairment that substantially limits

major life activities including walking and prolonged standing.

96.    Because of this impairment, Plaintiff requires reasonable accommodations to

meaningfully access court facilities, records, and judicial proceedings.

97.    Prior to the events described herein, Plaintiff requested and

received ADA accommodations in court proceedings, and

Defendants had actual knowledge of Plaintiff's disability and accommodation needs.

### B.  Public Entity Defendants

98.    Defendant State of Florida is a public entity within the meaning of

42 U.S.C. § 12131(1)(A).

99.    Defendant Clerk Nadia K. Daughtrey, sued in her official capacity,

is an instrumentality of the State and therefore a public entity.

within the meaning of 42 U.S.C. § 12131(1)(B).

100.    Defendant Sheriff James Potter, sued in his official capacity,

is a public entity within the meaning of 42 U.S.C. § 12131(1)(B).

### C. Services, Programs, or Activities at Issue

101. The services, programs, and activities at issue include:

      a. Access to criminal court proceedings;

      b. Access to accurate docket information and certified court records;

      c. Service validation and notice procedures;

      d. Adjudication of jurisdictional challenges; and

      e. Law-enforcement execution of court process.

102. These services constitute "services, programs, or activities".

within the meaning of Title II.

### D. Denial of Meaningful Access

103. A criminal proceeding was initiated against Plaintiff on [DATE]. August 29, 2025

104. The court docket reflected that service of process had occurred.

105. Plaintiff did not receive lawful service of process.

106. Plaintiff notified Defendants in writing on [DATE] January 12 - 14, 2026

that service had not occurred and that the court lacked personal jurisdiction.

107. Despite notice of the jurisdictional defect, the docket entry

reflecting service was not corrected.

108. Plaintiff requested certified docket records on January 20–21, 2026,

in order to challenge jurisdiction before enforcement.

109. The Clerk's Office delayed or obstructed timely access to

those certified records despite Plaintiff's approved ADA accommodations.

110. Non-disabled litigants are ordinarily able to obtain certified docket records

without comparable delay.

111. Before Plaintiff's jurisdictional challenge was adjudicated,

a capias was issued and executed.

112. Plaintiff was arrested and restrained before receiving.

meaningful judicial review of the service defect.

113. As a result, Plaintiff was denied meaningful access to court procedures.

necessary to contest personal jurisdiction before deprivation of liberty.

### E.  By Reason of Disability

114. Defendants had actual knowledge of Plaintiff's disability and accommodation needs.

115. Defendants failed to reasonably modify policies and practices to

ensure Plaintiff's timely access to certified records and jurisdictional review.

116. The delay and obstruction of record access prevented Plaintiff

from effectively challenging jurisdiction prior to arrest.

117. The denial of timely access to records and judicial review occurred

under circumstances in which non-disabled litigants would not face comparable barriers.

118. Plaintiff was therefore denied the benefits of court services and

subjected to discrimination by reason of disability.

### F.  Deliberate Indifference

119. Plaintiff provided notice of the service defect and

record-access issues prior to enforcement.

120. Despite that notice, Defendants failed to take corrective action to.

ensure accurate records or meaningful access before execution of the capias.

121. Defendants' failure to act after notice constitutes deliberate indifference to

Plaintiff's federally protected rights.

### G. Injury

122. As a direct and proximate result of Defendants' conduct, Plaintiff

    a. Was arrested without prior adjudication of jurisdiction;

    b. Lost liberty before meaningful access to the courts;

    c. Suffered emotional distress and disruption of personal affairs; and

    d. Continues to face risk of future enforcement based on defective records.

### H. Relief Requested

123. Plaintiff seeks declaratory relief that Defendants' acts and omissions violate Title II of the ADA.

124. Plaintiff seeks prospective injunctive relief requiring implementation of ADA-compliant procedures governing:

    A. Service verification;

    B. Record accuracy;

    C. Timely production of certified records; and

    D. Coordination of accommodations across court and law-enforcement entities.

125. Plaintiff seeks nominal damages of $1 against each public-entity Defendant.

126. Plaintiff seeks compensatory damages in excess of $75,000 as determined by a jury.

127. Plaintiff seeks reasonable legal fees and costs pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 1988.

**COUNT TWO (42 U.S.C. § 1983)**

**Denial of Access to Courts (Fourteenth Amendment)**

(Against Defendant Abigail Groff in Her Individual Capacity for Damages; in Her Official Capacity for Prospective Relief Under Ex parte Young; and Against Municipal Defendants Under Monell)

128.    Plaintiff realleges and incorporates paragraphs 1–115 as if fully set forth herein.

### A. Constitutional Right at Issue

129.    The Fourteenth Amendment guarantees a right of meaningful access to the courts, including the right to obtain adjudication of non-frivolous jurisdictional challenges before the State restrains liberty.

130.    The right is violated where state actors obstruct or foreclose a litigant's ability to present a non-frivolous legal claim and cause actual injury.

### B. Defendant Acting Under Color of State Law

131.    At all relevant times, Defendant Abigail Groff acted under color of state law within the meaning of 42 U.S.C. § 1983.

132.    Defendant Groff is sued in her individual capacity for actions taken personally that obstructed Plaintiff's access to courts.

133.    Defendant Groff is sued in her official capacity solely for prospective declaratory and injunctive relief to prevent ongoing enforcement of unconstitutional practices; such relief is authorized under the doctrine of Ex parte Young.

### C. Non-frivolous Underlying Legal Claim

134.  Plaintiff possessed a non-frivolous and meritorious jurisdictional
      defense based on lack of lawful service of process.

135.  Without lawful service, the court lacked personal jurisdiction.

136.  Plaintiff sought to obtain adjudication of this jurisdictional defect
      prior to any restraint of liberty through motions to quash or otherwise challenge service.

137.  The jurisdictional challenge was legally cognizable and
      capable of success if timely heard.

### D. Obstructive Conduct

138.  Court records reflected that service of process had occurred.

139.  Plaintiff had not been lawfully served.

140.  Plaintiff notified responsible officials of the service defect and
      requested correction and certified records necessary to
      challenge jurisdiction.

141.  Despite notice of the defect, the record reflecting service
      was maintained and relied upon.

142.  Defendant Groff, acting in an administrative or
      investigative capacity rather than a purely advocative role,
      participated in or ratified reliance upon the defective service record.

143.  Before adjudication of the jurisdictional challenge,
      a capias was issued and executed.

144.  Plaintiff was arrested before receiving meaningful judicial review
      of personal jurisdiction.

### E. Record Obstruction and Interference

145. Plaintiff requested certified docket entries and service documentation necessary to present the jurisdictional challenge.

146. Access to accurate and certified records was delayed, obstructed, or rendered ineffective prior to enforcement.

147. The obstruction prevented timely judicial review before liberty was restrained.

### F. Actual Injury and But-For Causation

148. As a direct result of Defendants' conduct, Plaintiff was arrested and restrained without prior adjudication of personal jurisdiction.

149. Plaintiff was denied the opportunity to have a court adjudicate the jurisdictional defect before deprivation of liberty but for the maintenance and reliance upon inaccurate service records and the obstruction of timely access to certified documentation.

150. Had accurate records been maintained and timely access provided, Plaintiff would have obtained judicial review of the jurisdictional defect before enforcement and avoided arrest and transport.

151. The deprivation of liberty was concrete, non-speculative, and directly traceable to the obstruction described herein.

### G. Municipal Liability (Monell)

152. The obstruction of jurisdictional review was caused by policies, customs, or practices that permitted enforcement to proceed without verification of lawful service.

153. These policies reflect deliberate indifference to
the constitutional right of access to courts and
were the moving force behind Plaintiff's injury.

## H. Exhaustion, Finality, and Federal Preservation

154. Plaintiff pursued available state remedies to challenge
jurisdictional defects and preserve federal constitutional claims.

155. This action challenges the independent conduct of
state actors that obstructed access to courts prior to and
separate from any final state-court judgment.

156. Plaintiff does not seek review of a state-court judgment but challenges pre-deprivation
obstruction and independent constitutional violations.

## I. Relief Requested

157. Plaintiff seeks compensatory damages against
Defendant Groff in her individual capacity.

158. Plaintiff seeks declaratory relief that the conduct
described herein violates the Fourteenth Amendment.

159. Plaintiff seeks prospective injunctive relief against
Defendant Groff in her official capacity to
prevent continued enforcement of unconstitutional practices.

160. Plaintiff seeks reasonable legal fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT THREE**

**42 U.S.C. § 1983 — FABRICATION OF OFFICIAL RECORDS / FALSE PROCESS**

(Fourteenth Amendment Due Process — Against Defendant Nadia K. Daughtrey)

161.    Plaintiff realleges and incorporates paragraphs 1–148 and all allegations
set forth in Count II as if fully set forth herein. The fabrication and
maintenance of false service records described in Count II constitute
the same jurisdictional predicate that caused both the obstruction of
Plaintiff's access to adjudication and the subsequent deprivation of liberty.

**A.   Constitutional Right at Issue**

162.    The Fourteenth Amendment prohibits state officials from fabricating,
falsifying, or knowingly maintaining materially false official records
where such conduct foreseeably results in deprivation of liberty.

163.    Lawful service of process is a constitutional prerequisite to the exercise of personal
jurisdiction and to coercive state action, including arrest

164.    When a state official creates or maintains records fabricating
the appearance of lawful service and jurisdiction, and
those records are relied upon to restrain liberty, due process is violated.

**B.   Defendant Acting Under Color of State Law**

165.    At all relevant times, Defendant Nadia K. Daughtrey acted under

20

color of state law in her capacity as Clerk responsible for the creation,

maintenance, certification, and transmission of court records.

166. Defendant Daughtrey is sued in her individual capacity for damages

based on her personal participation in maintaining materially false service records.

167. Defendant Daughtrey is sued in her official capacity solely

for declaratory and prospective injunctive relief.

## C.    Fabrication and Maintenance of False Jurisdictional Records

168. The court docket reflected lawful service of process upon Plaintiff.

169. No lawful service had occurred.

170. Defendant Daughtrey created, entered, certified, transmitted, or

maintained docket entries indicating service without lawful proof of service.

171. These entries materially misrepresented the existence of personal jurisdiction.

172. Plaintiff notified Defendant Daughtrey of the jurisdictional defect.

173. Despite notice, the inaccurate service record was not corrected and remained operative.

## D.    Foreseeable Reliance and Direct Causation

174. The service record was foreseeably relied upon by prosecutors to proceed with

enforcement.

175. Judicial officers relied upon the service record in issuing the capias.

176. The Sheriff's Office relied upon the capias and underlying service record in executing the arrest.

177. The capias would not have issued absent the record reflecting lawful service.

178. The Sheriff would not have executed the arrest absent issuance of the capias.

179. Plaintiff's arrest was therefore directly and proximately caused by Defendant Daughtrey's maintenance and certification of the false service record.

**E.    Unified Liberty Injury and But-For Causation**

180. Plaintiff was arrested and restrained without lawful personal jurisdiction.

181. The same false service record that obstructed Plaintiff's ability to obtain pre-deprivation adjudication in Count II formed the sole predicate for the arrest.

182. But for Defendant Daughtrey's maintenance and certification of materially false service records, the capias would not have issued and Plaintiff would not have been arrested.

183. The deprivation of liberty is inseparable from the denial of access to courts alleged in Count II; both injuries arose from the same fabricated jurisdictional predicate and constitute a single constitutional harm.

**F.    Absence of Absolute or Qualified Immunity**

184. The creation, maintenance, and certification of docket records are administrative and ministerial functions, not judicial acts.

185. Fabrication or maintenance of materially false service records is not conduct intimately associated with the judicial phase of litigation.

186. No reasonable clerk could believe it lawful to maintain or certify materially false jurisdictional records after notice of a service defect.

187. The right to be free from arrest absent lawful jurisdiction, and the right to be free from fabricated official records used to justify arrest, were clearly established at the time of the events alleged.

## G. Relief

188. Plaintiff seeks compensatory damages against Defendant Daughtrey in her individual capacity.

189. Plaintiff seeks declaratory relief that Defendant Daughtrey's maintenance and certification of materially false service records violated the Fourteenth Amendment.

190. Plaintiff seeks prospective injunctive relief requiring correction of inaccurate records and implementation of safeguards ensuring verification of lawful service before certification.

191. Plaintiff seeks legal fees and costs pursuant to 42 U.S.C. § 1988.

192. Counts II and III present two constitutional theories based on the same injury: unlawful deprivation of liberty arising from fabricated service.

## COUNT FOUR

**(42 U.S.C. § 1983)**

**Fourth Amendment – Unreasonable Seizure**

**Fourteenth Amendment – Procedural Due Process**

**Fourteenth Amendment – Denial of Access to Courts**

(Against Defendant Operator Redden – Individual Capacity)

### A.    Incorporation and Interlocking Allegations

193.    Plaintiff realleges and incorporates by reference paragraphs 1 through 151 of

This Complaint as if fully set forth herein, including all allegations contained.

in Counts II and III.

194.    The fabrication, alteration, and/or propagation of false, misleading, or

jurisdictionally defective records described in Count II constituted

constitutionally dangerous conduct that foreseeably resulted in:

A. Disruption of Plaintiff's access to adjudication prior to enforcement; and

B. Deprivation of liberty through execution of void or unenforceable process.

195.    Count II alleges denial of meaningful access to courts under the Fourteenth

Amendment against Defendant Abigail Groff in her individual capacity,

in her official capacity for prospective relief, and against municipal actors

under Monell principles.

196.    Count III alleges deprivation of liberty without constitutionally adequate process

arising from the same fabricated or defective enforcement predicate.

197.    Count IV arises from the same operative facts and alleges that the fabricated,

defective, or unlawfully propagated process was verified, transmitted, or

operationalized by Defendant Ridden, resulting in unconstitutional seizure.

198. The constitutional injury is singular and indivisible: enforcement of void, fabricated, or jurisdictionally defective process prior to lawful adjudication.

199. If the process was valid and lawfully supported, the liberty-based claims in Counts II, III, and IV fail together.

200. If the process was fabricated, unserved, or jurisdictionally defective as alleged, the denial-of-access and unlawful-seizure theories mutually reinforce and establish a unified constitutional violation.

**B.   Parties and Capacity**

201. Defendant Operator Redden ("Redden") is an individual whose full legal name is presently unknown to Plaintiff.

202. At all relevant times, Redden acted under color of state law as an operator, dispatcher, communications agent, or warrant-verification official for DeSoto County and/or its Sheriff's Office.

203. Redden is sued in his individual capacity.

**C.   Core Constitutional Predicate**

204. At all relevant times, Plaintiff had not been lawfully served with process sufficient to establish personal jurisdiction in the underlying proceeding.

205. Any capias, warrant, or enforcement directive issued against Plaintiff was void, jurisdictionally defective, fabricated, or otherwise unenforceable at the time Defendant Ridden verified or transmitted it.

206. The Constitution prohibits seizure or restraint of liberty based upon void, fabricated, or unserved process.

**D.  Personal Participation**

207.  Defendant Redden personally participated in the events giving rise to this action
by verifying, transmitting, communicating, or affirmatively confirming warrant or
capias information concerning Plaintiff.

208.  Redden did so without confirming lawful service of process, personal jurisdiction,
or the constitutional validity of the underlying capias.

209.  Redden's conduct was not purely ministerial; it involved discretionary
enforcement communication that affirmatively enabled execution.

210.  Redden's verification or transmission set in motion a chain of events that
foreseeably resulted in Plaintiff's seizure or restraint of liberty.

**E.  Fourth Amendment – Unreasonable Seizure**

211.  Plaintiff was subjected to seizure and/or restraint of liberty as a direct result of
enforcement based on defective or fabricated process.

212.  Because the underlying process was void, unserved, or jurisdictionally defective,
no lawful probable cause existed to justify seizure.

213.  Enforcement of void or fabricated process constitutes an unreasonable seizure
under the Fourth Amendment.

### F.    Fourteenth Amendment – Procedural Due Process

214.    Plaintiff possessed a clearly established right not to be deprived of liberty without valid service and jurisdiction.

215.    Defendant Redden caused Plaintiff to be deprived of liberty before any judicial adjudication of service or jurisdiction could occur.

216.    The deprivation occurred without constitutionally adequate process.

### G.    Fourteenth Amendment – Denial of Access to Courts

217.    Prior to enforcement, Plaintiff possessed a non-frivolous jurisdictional defense based on lack of service and absence of personal jurisdiction.

218.    Plaintiff intended to file or assert a motion to quash, dismiss, or otherwise challenge the capias before any deprivation of liberty.

219.    Because Defendant Ridden verified and transmitted the defective warrant information as executable, enforcement occurred before Plaintiff could obtain judicial review of those jurisdictional defects.

220.    The seizure deprived Plaintiff of the opportunity to secure a pre-deprivation adjudication of service and jurisdiction.

221.    The specific remedy lost was avoidance of arrest or restraint based on void or fabricated process.

222.    This constitutes an actual injury: loss of liberty and loss of the ability to prevent enforcement through timely judicial challenge.

223.    The injury cannot be cured by post-deprivation review because the constitutional violation consisted of being seized without lawful jurisdiction in the first instance.

### H.  Causation

224.  Defendant Redden's verification and communication of defective or
      fabricated warrant information was a direct and proximate cause of
      Plaintiff's seizure and liberty deprivation.

225.  The seizure was a foreseeable consequence of transmitting unenforceable process
      as actionable.

226.  But for Defendant Ridden's conduct, enforcement would not
      have occurred in the manner and at the time it did.

### I.  Mental State

227.  Defendant Ridden knew or reasonably should have known that verifying or
      Transmitting unconfirmed warrant information could result in unlawful seizure.

228.  The risk of constitutional violation was obvious where service and
      jurisdiction had not been confirmed.

229.  Defendant Redden acted with deliberate indifference to
      Plaintiff's clearly established constitutional rights.

### J.  Qualified Immunity Rebuttal

230.  At the time of Defendant Redden's conduct, it was clearly established that
      enforcement  based upon void, fabricated, or unserved process violates
      the Fourth and Fourteenth Amendments.

231.  It was clearly established that state actors may not affirmatively enable
      Unconstitutional seizures by verifying or transmitting defective process.

232.  A reasonable operator or dispatcher in Defendant Redden's position would have known that verifying or transmitting unenforceable capias information violated clearly established rights.

233.  Defendant Redden is therefore not entitled to qualified immunity.

## K.  Damages

234.  As a direct and proximate result of Defendant Redden's conduct, Plaintiff suffered:

   a. Unlawful seizure and restraint of liberty;

   b. Loss of procedural protections;

   c. Denial of meaningful access to courts;

   d. Emotional distress, humiliation, fear of arrest, and disruption of liberty interests;

   e. Additional consequential damages to be proven at trial.

## L.  Relief Requested

235.  WHEREFORE, as a direct and proximate result of the constitutional violations Alleged herein, Plaintiff demands judgment against Defendant Operator Redden, in his individual capacity, and respectfully requests:

236.  Compensatory damages in an amount to be determined at trial for the unlawful seizure, deprivation of liberty, denial of procedural protections, denial of meaningful access to courts, emotional distress, humiliation, and all other injuries proven.

237.  Nominal damages for the violation of Plaintiff's constitutional rights.

238.  Punitive damages as allowed by law.

239.  Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

240.  Pre-judgment and post-judgment interest as allowed by law.

241.  Such other and further relief as this Court deems just and proper.

**COUNT FIVE**

**42 U.S.C. § 1983**

**Municipal Liability – Policy, Custom, Failure to Train and Supervise**

(Against Defendant Sheriff James F. Potter in His Official Capacity)

242.  Plaintiff realleges and incorporates paragraphs 1–200

as if fully set forth herein  Final Policymaker.

243.  At all relevant times, Defendant Sheriff James F. Potter was the elected

Sheriff of  DeSoto County and the final policymaker for law-enforcement operations,

training, supervision, transport procedures, warrant execution, and

detainee safety within the Sheriff's Office.

244.  Official-capacity claims against Sheriff Potter are claims

against the Sheriff's Office as a municipal entity.

**A. Policy, Custom, and Practice**

245.  Plaintiff's injuries were caused by policies, customs, or practices of

the Sheriff's Office, including:

(a) Enforcement of capias or warrant information without verification of lawful

service or personal jurisdiction;

(b) Execution of custodial transport without adequate safeguards for injured

detainees;

(c) Substitution of law-enforcement judgment for medical judgment during arrest

and transport;

(d) Failure to implement ADA accommodation protocols during custody and transport;

(e) Failure to discipline or correct deputies who execute jurisdictionally defective process.

## B. Failure to Train – Canton Theory

246. The Sheriff's Office failed to adequately train deputies and operators regarding:

(a) Verification of lawful service before enforcement;

(b) Constitutional limits on enforcement of void or defective process;

(c) Safe restraint and transport of mobility-impaired detainees;

(d) Mandatory accommodation obligations under Title II of the ADA;

(e) Appropriate deference to medical risk during custodial control.

247. The need for such training was obvious because deputies routinely execute capias and transport detainees who may have disabilities or jurisdictional defects.

248. The risk that deputies would unlawfully seize or injure individuals absent such training was plainly foreseeable.

249. Despite this obvious need, Sheriff Potter failed to implement adequate training protocols.

### C. Single-Incident / Obvious Need

250.   Even absent a documented pattern, the need for training in lawful warrant verification and safe transport of injured detainees is so obvious that failure to provide such training constitutes deliberate indifference under City of Canton v. Harris.

### D. Failure to Supervise and Discipline

251.   The Sheriff's Office failed to implement supervisory review mechanisms ensuring:

   (a) Confirmation of valid jurisdiction before transport;

   (b) Review of injury-related transport decisions;

   (c) Corrective action after constitutional violations.

252.   This failure to supervise and discipline communicated tacit approval of unconstitutional enforcement practices.

### E. Deliberate Indifference

253.   Sheriff Potter knew or should have known that deputies and operators regularly rely on transmitted warrant information without independent constitutional verification.

254.   Sheriff Potter knew or should have known that detainees with mobility impairments face heightened risk during custodial restraint and transport.

255.   Despite this knowledge, Sheriff Potter failed to implement safeguards.

### F. Moving Force

256. These policies, customs, failures to train, and failures to supervise were the moving force behind:

     (a) Plaintiff's unlawful seizure;

     (b) Plaintiff's unsafe transport and injury aggravation;

     (c) Deprivation of medical consideration;

     (d) Denial of ADA-compliant accommodation during custody.

257. But for these municipal policies and failures, Plaintiff would not have been seized and transported in the unconstitutional manner alleged.

### G. Unified Liberty Injury

258. The seizure, transport, and injury were not isolated acts of rogue officers but were the predictable result of institutional practices.

### H. Relief

259. Plaintiff seeks compensatory damages, declaratory relief, and prospective injunctive relief requiring implementation of:

     (a) Warrant-verification safeguards;

     (b) ADA-compliant transport procedures;

     (c) Medical-risk transport protocols;

     (d) Supervisory review and discipline systems.

## V.   PRAYER FOR RELIEF

260.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

### A.  Declaratory Relief

261.   A declaration that the acts and omissions described in Count I violate Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

262.   A declaration that the conduct described in Count II violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, including the right of meaningful access to the courts.

263.   A declaration that the conduct described in Count III violated Plaintiff's rights under the Fourteenth Amendment, including the prohibition against fabrication or maintenance of materially false official records resulting in deprivation of liberty.

264.   A declaration that the conduct described in Count IV violated Plaintiff's rights under the Fourth and Fourteenth Amendments, including the right to be free from unreasonable seizure and deprivation of liberty without due process of law.

265.   A declaration that the policies, customs, and failures to train and supervise described in Count V constitute municipal liability under 42 U.S.C. § 1983.

### B.  Injunctive Relief

266.   Prospective injunctive relief requiring public-entity Defendants to implement ADA-compliant procedures ensuring meaningful access to certified court records and jurisdictional review prior to enforcement.

267. Prospective injunctive relief requiring verification of lawful service and personal jurisdiction before issuance, certification, transmission, or execution of capias or warrant process.

268. Prospective injunctive relief requiring correction of materially inaccurate or defective service records.

269. Prospective injunctive relief requiring implementation of constitutional warrant-verification safeguards within the Sheriff's Office.

270. Prospective injunctive relief requiring ADA-compliant custody and transport procedures, including medical-risk assessment protocols.

**C. Damages**

271. Compensatory damages against individual Defendants in their individual capacities in an amount to be determined at trial.

272. Compensatory damages against municipal Defendants consistent with 42 U.S.C. § 1983.

273. Nominal damages for violations of constitutional rights.

**D. Punitive Damages**

274. Punitive damages against individual Defendants in their individual capacities where authorized by law and where conduct is proven to be reckless, callous, or in deliberate indifference to federally protected rights.

**E. Legal Fees And Costs**

275. Reasonable legal fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12133, and other applicable law.

**F. Pre- And Post-Judgment Interest**

276. Pre-judgment and post-judgment interest as permitted by law.

### G. Further Relief

277.    Plaintiff seeks declaratory and injunctive relief consistent with

Ex parte Young and not barred by Younger v. Harris, 401 U.S. 37 (1971),

as the relief sought addresses collateral unconstitutional conduct and

ongoing threats to federal rights rather than interference with state proceedings.

278.    Such other and further relief as this Court deems just and proper.

### H. Jury Demand

279.    Plaintiff demands trial by jury on all issues so triable as a matter of right.


### VI.    Signature Block

280.    Respectfully submitted,

GREGG MARCELLUS HARDEN,

Plaintiff, Pro Se

1121 W. Price Blvd., Unit no. 2001,

North Port, FL 34288

(941) 586-8854

ummahservices1@gmail.com

**Dated**: Monday, February 17, 2026

## VII.    Certificate Of Service

I HEREBY CERTIFY that on this 17th day of February, 2026,

the foregoing pleading was filed with the Clerk of Court at the Fort Myers Division of

the United States District Court for the Middle District of Florida.

Service of process upon Defendants will be effected by the United States Marshal Service

pursuant to Federal Rule of Civil Procedure 4(c)(3) and the Court's Order directing service.

Service upon the State of Florida and/or the Attorney General of Florida

will be effected pursuant to Federal Rule of Civil Procedure 4(j)(2).

Service upon individual defendants will be effected pursuant to

Federal Rule of Civil Procedure 4(e).

Any further pleadings following service of process will be served

in accordance with Federal Rule of Civil Procedure 5 by U.S. Mail or commercial carrier.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

GREGG MARCELLUS HARDEN, Plaintiff, Pro Se

1121 W. Price Blvd., Unit no. 2001, North Port, FL 34288

(941) 586-8854 / ummahservices1@gmail.com

Dated: Monday, February 17, 2026